# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**RODOSVALDO CARMENATE-POZO,**

    **Petitioner,**

    **v.**                                                  **Case No. 18-CV-693**

**DALE SMITH,**

    **Respondent.**

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Rodosvaldo Carmenate-Pozo, a citizen of Cuba subject to a final order of removal and currently detained at the Dodge County Jail pending actual removal, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Carmenate-Pozo alleges his continued detention beyond six months is contrary to *Zadvydas v. Davis*, 533 U.S. 678 (2001). He seeks a writ ordering his immediate release. For the reasons stated below, the petition is denied.

## BACKGROUND

The history of Carmenate-Pozo's immigration proceedings is taken from the declaration of Michael Landmeier, a Deportation Officer for the Enforcement and Removal Office ("ERO"), Immigration Customs Enforcement ("ICE"), of the Department of Homeland Security. Carmenate-Pozo is a citizen of Cuba who entered the United States on the "Mariel Boat Lift," a mass flotilla of refugees that departed Mariel Harbor in Cuba and landed in Florida on June 3, 1980. (Declaration of Deportation Officer Landmeier ("Landmeier Decl.") ¶ 6, Docket # 12.) Carmenate-Pozo was ordered removed by an Immigration Judge on April 5, 1993. That order remains final. (*Id.* ¶ 7.) On

June 21, 1995, Carmenate-Pozo was convicted in LaCrosse County, Wisconsin, for Manufacture and Delivery of a Schedule I Controlled Substance and sentenced to 25 years in prison. (*Id.* ¶ 8.)

Because of Carmenate-Pozo's method of entry into the United States and his criminal conviction, Carmenate-Pozo is eligible for repatriation to Cuba pursuant to an agreement reached between the United States and Cuban governments on January 12, 2017. (*Id.* ¶ 9.) Carmenate-Pozo's order of removal could not be effectuated prior to the agreement between the United States and Cuban governments. (*Id.* ¶ 10.) As such, Carmenate-Pozo has been reporting to ERO on an order of supervision over the years. (*Id.*)

Carmenate-Pozo was taken into ICE custody when he reported to ERO on his order of supervision on April 5, 2018, as he is now eligible for repatriation to Cuba pursuant to the January 12, 2017 agreement. (*Id.* ¶ 11.) ERO has been processing the necessary paperwork with the Cuban government and will be notified by the Cuban government on or around August 15, 2018 whether Carmenate-Pozo is approved for repatriation. (*Id.* ¶ 12.) In the meantime, ERO has completed a custody review of Carmenate-Pozo's case and offered to release him on June 21, 2018 on an order of supervision with a $5,000.00 supervision bond. (*Id.* ¶ 13.) To date, Carmenate-Pozo has not paid the bond. (*Id.*) Carmenate-Pozo will be repatriated to Cuba as soon as the Cuban government gives its approval, on or around August 15, 2018. (*Id.* ¶ 14.)

## ANALYSIS

A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

An alien ordered removed from this country generally must be removed within ninety days. 8 U.S.C. § 1231(a)(1)(A). This is called the "removal period." *Id.* During that period, the alien must be detained. *Id.* § 1231(a)(2). If not removed within the removal period, the alien is normally to be released under the government's supervision. *Id.* § 1231(a)(3). However, the Attorney General may continue to detain him beyond the removal period if the alien presents a risk to the community or is unlikely to comply with the order of removal. *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (emphasis in original), the Supreme Court addressed "whether [the] post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." The Court determined that the latter was the appropriate standard. *Id.* at 689. To find that the statute permitted indefinite detention would, in the Court's view, raise serious due process concerns. *Id.* at 690. Although the text of the statute says nothing about reasonableness, the Court read that limitation into it to avoid a collision with the Constitution. *See id.* at 690–98.

Thus, the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In such a case, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700. Further, if removal is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* at 700.

To provide clarity to later courts, the Court specified that a presumptively reasonable period of detention for purposes of removal should not exceed six months. *Id.* at 701. Once that period expires, and once the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* The alien need not show "the absence of any prospect of removal—no matter how unlikely or unforeseeable," but merely that removal is not reasonably foreseeable. *Id.* at 702. Similarly, the government cannot rest solely on assertions of good-faith efforts to secure removal. *Id.* As the period of post-removal confinement grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. However, the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Carmenate-Pozo argues that "there is no such Cuba [and] U.S. deportation agreement. None whatsoever." (Docket # 17 at 2.) Carmenate-Pozo includes printed information, copyrighted 2011, from the Heartland Alliance's National Immigrant Justice Center, that lists Cuba as a country that will not accept the deportation of its citizens. (Docket # 17-1 at 1-2.) Carmenate-Pozo also asserts that Deportation Officer Landmeier told him on April 5, 2018 that it would be difficult to obtain travel papers from the Cuban Embassy, thus evidencing that his removal remains impossible. (Docket # 6 at 3.)

Under *Zadvydas*, even after the six month presumptively reasonable period of detention has expired, Carmenate-Pozo must still provide good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future. 533 U.S. at 701. As the court explained in *Mancera v. Kreitzman*, No. 16-CV-89, 2016 WL 1249600, at *3 (E.D. Wis. Mar. 29, 2016):

> *Zadvydas* involved challenges to § 1231(a)(6) by aliens ordered removed but not actually removed given the lack of any country willing to accept them or the lack of an extradition treaty or repatriation agreement with the would-be receiving country. 533 U.S. at 684. The aliens argued the government would never be able to remove them and they therefore would be permanently confined in civil immigration detention, which would violate due process. *Id.* at 685–86.

While Carmenate-Pozo argues that there is no agreement between Cuba and the United States regarding repatriation of its citizens, he is incorrect. On January 12, 2017, Cuba and the United States issued a joint statement in which Cuba agreed to repatriate 2,746 citizens who arrived via the Port of Mariel in 1980 and were found by the competent authorities of the United States to have tried to irregularly enter or remain here in violation of United States law. *See* Joint Statement between Government of the United States and Cuba, Department of Homeland Security, https://www.dhs.gov/publication/joint-statement-between-government-united-states-and-cuba (last visited Aug. 8, 2018). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 (S.D. Ill. 2006) ("The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet.").

Thus, while it is possible Carmenate-Pozo will be denied repatriation, I cannot conclude that there is no significant likelihood of Carmenate-Pozo's removal in the reasonably foreseeable future. Furthermore, even if removal was no longer reasonably foreseeable and detention was no longer authorized by statute, the alien's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 699-700. Carmenate-Pozo was ordered released in a Notice of Custody Determination dated June 25, 2018

with a $5,000.00 supervision bond. (Landmeier Decl. ¶ 13; Docket # 17-1 at 5.) While Carmenate-Pozo has not yet paid the bond, he will be released upon posting of the bond. Therefore, Carmenate-Pozo's continued detention is authorized under § 1231(a)(6) as construed by the Supreme Court in *Zadvydas*. For these reasons, Carmenate-Pozo's petition for a writ of habeas corpus is denied without prejudice.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that petitioner's motion to strike (Docket # 9), motion for evidentiary hearing (Docket # 18), and second motion for evidentiary hearing (Docket # 20) are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of August, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge